SUPREME JUDICIAL COURT 
 
 JAIRIN PEREZ vs. COMMONWEALTH

 
 Docket:
 SJC-13731
 
 
 Dates:
 April 11, 2025 – July 30, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Homicide. Constitutional Law, Sentence, Parole, Double jeopardy. Parole. Practice, Criminal, Sentence, Parole, Double jeopardy. Imprisonment, Credit for time served. Supreme Judicial Court, Superintendence of inferior courts.
 
 

             Civil action commenced in the Supreme Judicial Court for the county of Suffolk on September 4, 2024.
            The case was reported by Kafker, J.
            Valerie A. DePalma for the defendant.
            Rachel J. Eisenhaure, Assistant District Attorney, for the Commonwealth.
            Benjamin H. Keehn, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.
            BUDD, C.J.  In 2002, the defendant, Jairin Perez, was convicted of two counts of murder in the first degree and received two concurrent sentences of life in prison without the possibility of parole.[1]  After our decision in Commonwealth v. Mattis, 493 Mass. 216 (2024), the defendant, who was nineteen years old at the time he committed his crimes, moved to be resentenced to two concurrent terms of life in prison with the possibility of parole after fifteen years.  At the same time, he moved to correct the mittimus[2] to reflect credit for time served.[3]
            The Commonwealth opposed the motion to correct the mittimus and sought a hearing to determine whether the defendant should be resentenced to concurrent or consecutive life sentences (with the possibility of parole).  When the Commonwealth's motion for a hearing was granted, the defendant sought relief pursuant to G. L. c. 211, § 3, and a single justice of this court reserved and reported the matter to the full court.
            We conclude that double jeopardy principles do not prohibit resentencing the defendant to consecutive rather than concurrent sentences of life imprisonment with the possibility of parole pursuant to Mattis.  We further conclude that, in either case, the defendant is entitled to credit for time that he has already served on each of the concurrent life sentences.[4]
            Background.  The evidence presented at the defendant's trial is summarized in Commonwealth v. Perez, 444 Mass. 143, 144-147 (2005).  Facts concerning the postconviction pleadings and proceedings are taken from the record.
            On July 13, 2001, when the defendant was nineteen years old, he shot and killed Lisandro Medina and Edward Negron.  The defendant was charged with two counts of murder in the first degree on theories of both deliberate premeditation and extreme atrocity or cruelty, and a jury convicted him of both counts, under both theories.  The defendant was sentenced to two concurrent terms of life without the possibility of parole.  This court later affirmed the defendant's convictions.  See Perez, 444 Mass. at 156.
            Nearly twenty years after affirming the defendant's convictions in this case, this court issued its opinion in Mattis, 493 Mass. at 235, holding that the imposition of life without the possibility of parole for emerging adult[5] homicide offenders violated the prohibition of cruel or unusual punishment under art. 26 of the Massachusetts Declaration of Rights.[6]  The defendant subsequently moved under Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001), for an order vacating his sentences and resentencing him to concurrent sentences of life with the possibility of parole after fifteen years, in accordance with Mattis.
            The Commonwealth opposed the defendant's motion and requested a resentencing hearing to determine whether the defendant should be sentenced to consecutive life sentences, each with parole eligibility after fifteen years.  When the Commonwealth's motion for a resentencing hearing was allowed, the defendant sought to withdraw his motion to vacate his sentences, and submitted another motion to simply correct the mittimus.   After an oral motion for reconsideration regarding a sentencing hearing was denied, the defendant filed a petition for relief under G. L. c. 211, § 3, and a single justice of this court reserved and reported the case to the full court. 
            Discussion.  The parties disagree as to the correct mechanism to bring the defendant's sentence into compliance with Mattis.  The defendant suggests that the only change required is to convert his two concurrent sentences of life in prison without the possibility of parole to sentences of life with the possibility of parole, and that to do so a simple correction of his mittimus is all that is necessary.  The Commonwealth contends that a resentencing hearing is in order, and that a judge must determine whether the defendant's sentences should be imposed consecutively rather than concurrently.  The defendant claims that exposure to the possibility of having to serve his sentences consecutively when they were originally to be served concurrently would violate State and Federal double jeopardy protections.  The defendant additionally claims that even if he were to be resentenced to consecutive terms of life in prison with the possibility of parole, he must receive credit for the time he has already served on each of his concurrent sentences.
            1.  Double jeopardy at resentencing.  We begin with the defendant's claim that resentencing him to consecutive sentences would expose him to double jeopardy.  Among other things, the guarantee against double jeopardy protects "against multiple punishments for the same offense."[7]  Commonwealth v. Selavka, 469 Mass. 502, 509 (2014), quoting Aldoupolis v. Commonwealth, 386 Mass. 260, 271-272, cert. denied, 459 U.S. 864 (1982), S.C., 390 Mass. 438 (1983).  This protection "generally implies that '[a]fter a sentence is final, . . . a defendant may not be sentenced again for that same conviction.'"  Commonwealth v. Tinsley, 487 Mass. 380, 391 (2021), quoting Commonwealth v. Goodwin, 458 Mass. 11, 19–20 (2010).  Thus, generally speaking, double jeopardy principles "represent[] a constitutional policy of finality for the defendant's benefit."  Tinsley, supra.  See, e.g., Martin v. Commonwealth, 492 Mass. 74, 78-79 (2023), citing Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979) (defendant's "legitimate interest in repose" crystalizes sixty days after disposition).
            However, a defendant's expectation of finality in the sentences imposed is not absolute:  it is diminished when he or she files a motion for postconviction relief.  Tinsley, 487 Mass. at 391-392.  Moreover, if a defendant successfully challenges one sentence imposed as part of a sentencing package, it "opens up all the interdependent, lawful sentences for reconsideration without violating the double jeopardy clause."  Id. at 391, quoting Shabazz v. Commonwealth, 387 Mass. 291, 295-296 (1982).  See Tinsley, supra at 392, quoting Commonwealth v. Cumming, 466 Mass. 467, 471 (2013) ("A defendant does not have 'a reasonable expectation of finality in any one part or element of [an interdependent] bundle of sentences, but rather, in the entirety of the scheme'").
            Thus, in certain circumstances, under our State double jeopardy protections a defendant may be resentenced, so long as it does "not result in any increase in the aggregate punishment," Tinsley, 487 Mass. at 392, quoting Commonwealth v. Parrillo, 468 Mass. 318, 321 (2014), and does not occur on "any conviction for which the defendant has already fully served his sentence," Tinsley, supra, quoting Commonwealth v. Sallop, 472 Mass. 568, 570 (2015).[8]
            Here, if a resentencing hearing were to result in the defendant having to serve his sentences consecutively rather than concurrently, such a change would not result in an increase in his aggregate punishment.  To the contrary, at the time the defendant was originally sentenced, he expected to spend the rest of his life in prison.  Even if the defendant were to be resentenced to consecutive terms of life in prison with parole eligibility after fifteen years on each count, he still would be parole eligible after thirty years -- a less severe punishment than life without the possibility of parole, to which he was originally sentenced.[9]  Thus, a potential resentencing from concurrent sentences of life in prison without the possibility of parole to consecutive sentences of life with the possibility of parole would not violate double jeopardy principles.
            2.  Vehicle to amend sentence.  Although Mass R. Crim. P. 30 (a)[10] is the common route to adjust an illegal sentence, the defendant argues that a rule 30 motion and hearing is not necessary in his case.  Rather, he contends that the Mattis decision "invalidated as unconstitutional only the parole-ineligibility components [of his sentences], leaving all other parts . . . in place," including the concurrent nature of the sentences.  Thus, he argues, a correction of the mittimus is all that is required.  We are unconvinced.
            Our holding in Mattis, 493 Mass. at 235, invalidated certain portions of the criminal code that denied the possibility of parole to those who were emerging adults when they committed their crimes, thereby making the defendant eligible for certain relief, but it did not automatically alter the defendant's sentence in this case.  See Mass. R. Crim. P. 30 (a) (directing that person whose "liberty is restrained" may move to correct unconstitutional sentence).
            When the defendant was sentenced, he received an integrated sentencing package for two convictions of murder in the first degree stemming from a single incident.  See Tinsley, 487 Mass. at 390, citing Shabazz, 387 Mass. at 292, 295 n.4.  Because the then-existing sentencing scheme did not allow for the possibility of parole, see G. L. c. 265, § 2, as amended through St. 1982, c. 554, § 3, there was no practical difference between serving two life sentences concurrently or consecutively.  However, given developments in the law, the choice between imposing concurrent or consecutive sentences directly affects the amount of time a defendant must serve before becoming eligible for parole.  Thus, where, as here, the Commonwealth seeks an opportunity to argue that a consecutive rather than a concurrent sentence is appropriate in these circumstances, a sentencing hearing is the proper vehicle to do so.[11]  See Commonwealth v. Wiggins, 477 Mass. 732, 748 (2017); Parrillo, 468 Mass. at 321 (where sentence "imposed as part of an 'integrated package'" subsequently deemed unconstitutional "may have played a part in the judge's over-all concept in sentencing[,] . . . the judge must be afforded the opportunity to restructure [the] sentence" [citation omitted]).  See also Commonwealth v. Costa, 472 Mass. 139, 144 (2015) (resentencing appropriate where judge "could not have known" effect of issuing concurrent versus consecutive sentences).
            3.  Credit for time served.  As explained in note 6, supra, pursuant to Mattis, 493 Mass. at 237, the defendant is eligible for parole after serving fifteen years of his prison sentence on each murder conviction.  The defendant has been incarcerated for over twenty-three and one-half years.  The Commonwealth argues that if the defendant is resentenced to consecutive sentences, he would be parole eligible after serving thirty years (no later than 2031).  The defendant, on the other hand, argues that he is parole eligible immediately.  We agree with the defendant.   
            Double jeopardy principles require that, upon resentencing, any time a defendant has served must be "fully subtracted from any new sentence [the defendant] might receive."  Commonwealth v. Sanchez, 485 Mass. 491, 509 & n.11 (2020), citing North Carolina v. Pearce, 395 U.S. 711, 718–719 (1969) ("constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited'").  See also Commonwealth v. Hallinan, 491 Mass. 730, 754 (2023) ("Not crediting the prior time served clearly would implicate double jeopardy concerns"). 
            The Commonwealth's proposition would effectively deny the defendant credit for time he has served on each concurrent sentence, clearly violating these principles.  Prior to any resentencing, the defendant continues to earn credit towards his sentence as it currently exists, meaning he is earning credit concurrently on both murder convictions.  See Commonwealth v. Barber, 37 Mass. App. Ct. 599, 602 (1994) ("A concurrent sentence runs together, in whole or in part, with another sentence"); Black's Law Dictionary 1641 (12th ed. 2024) ("concurrent sentences" are "[t]wo or more sentences of jail time to be served simultaneously").  If the defendant were to be resentenced to consecutive terms of life with the possibility of parole after fifteen years on each sentence, that cannot undo the reality that he has, in fact, already served over twenty-three years on each sentence.  Cf. Lynch, petitioner, 379 Mass. 757, 758-759 (1980) ("To say that the petitioner was not serving his eighteen-to-twenty-year sentences flies in the face of reality and would be manifestly unfair").  Thus, even if the defendant's parole eligibility date was to be extended to consecutive periods of fifteen years, he has already served more than fifteen years on each sentence and would be immediately eligible for parole.
      Conclusion.  Double jeopardy principles do not preclude the Commonwealth from seeking consecutive sentences at resentencing; however, the defendant is entitled to credit for time he has already served on each of his concurrent sentences, no matter the outcome of any resentencing.  As in Costa, 472 Mass. at 149, "[a]t the resentencing proceeding, in addition to the factors considered at any sentencing, the judge should consider (a) the Miller factors;[12] (b) evidence regarding the defendant's psychological state at the time of the offense; and (c) evidence concerning the defendant's postsentencing conduct, whether favorable or unfavorable."  We remand the case to the county court for entry of a judgment consistent with this opinion.
So ordered.
 
footnotes

 
            [1] Although Jairin Perez commenced this action by filing a petition in the county court, for convenience we refer to him as the "defendant."
            [2] A mittimus "is a ministerial document . . . executed on behalf of the court by a clerk, addressed to the sheriff who had custody of the accused during trial and to the future custodian (sheriff or superintendent of a correctional institution) of the prisoner, that directs where the prisoner shall be taken for incarceration, states what the sentence is, and states how many days of the sentence the prisoner is deemed to have served, commonly while awaiting trial and sentencing."  Commonwealth v. Barriere, 46 Mass. App. Ct. 286, 289 (1999).  "[A] court has plenary power at any time to correct errors in its records," including in mittimuses.  Id., quoting Bolduc v. Commissioner of Correction, 355 Mass. 765, 767 (1969).
            [3] Specifically, the defendant moved "for an order correcting the mittimus, nunc pro tunc, to the original sentencing date, . . . and awarding jail credit for all time served under the previously imposed unconstitutional sentence."
            [4] We acknowledge the amicus letter submitted by the Committee for Public Counsel Services.
            [5] Under Mattis, emerging adults are those who were eighteen, nineteen, or twenty years of age when they committed the crime.  Mattis, 493 Mass. at 217 & n.1.
            [6] Our decision in Mattis, 493 Mass. at 237, established that defendants "who committed their offense prior to August 2, 2012, are entitled to parole eligibility after serving fifteen years in prison."  See id., citing Commonwealth v. Brown, 466 Mass. 676, 689 n.10 (2013), and Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 673 (2013), S.C., 471 Mass. 12 (2015).  The defendant, who committed his offenses on July 13, 2001, is in this cohort.
            [7] Unlike the Federal Constitution's explicit prohibition of double jeopardy, see Fifth Amendment to the United States Constitution, under Massachusetts law, these principles are derived from our common law, rather than the Declaration of Rights.  Commonwealth v. Selavka, 469 Mass. 502, 509 n.8 (2014). The protection against double jeopardy also guards against a second prosecution for the same offense after either a conviction or an acquittal.  Id. at 509.
            [8] We note that our common-law requirement that resentencing not result in an increase in aggregate punishment may provide more protection than that which is provided under the Fifth Amendment.  See United States v. Fogel, 829 F.2d 77, 86-87 (D.C. Cir. 1987), citing United States v. DiFrancesco, 449 U.S. 117, 101 (1980) ("If . . . there is some circumstance which undermines the legitimacy of [the defendant's] expectation [of finality], then a court may permissibly increase the sentence").
            [9] To the extent the defendant suggests that Mattis created a new expectation of finality in obtaining parole after fifteen years, that argument is without merit.  As discussed infra, our decision in Mattis did not reconfigure the defendant's expectation of finality in his original sentence, which crystallized sixty days after its imposition.  See Martin, 492 Mass. at 79.  Thus, any measure of aggregate punishment is drawn against the defendant's original sentence of life without the possibility of parole.
            [10] Rule 30 (a) of the Massachusetts Rules of Criminal Procedure provides:
"Any person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or her or to correct the sentence then being served upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts."
            [11] By contrast, if the defendant had been convicted of only a single count of murder committed prior to August 2, 2012, correction of the mittimus would have been an available option because the judge would lack discretion to impose any sentence but life in prison with parole eligibility after fifteen years.  See Mattis, 493 Mass. at 237.
            [12] The Miller factors are:
"(1) the defendant's chronological age and its hallmark features -- among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the family and home environment that surrounds the defendant; (3) the circumstances of the homicide offense, including the extent of [the defendant's] participation in the conduct and the way familial and peer pressures may have affected him or her; (4) whether the defendant might have been charged and convicted of a lesser offense if not for incompetencies associated with youth -- for example, [the defendant's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the defendant's] incapacity to assist his [or her] own attorneys; and (5) the possibility of rehabilitation" (quotations omitted).
Costa, 472 Mass. at 147, quoting Miller v. Alabama, 567 U.S. 460, 477 (2012).